**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**VALARY WARD**                                                                              **PLAINTIFF**

**v.**                                    **Case No.: 4:20-cv-00385-LPR**
                                          **Case No.: 4:20-cv-01436-LPR**

**ARKANSAS CHILDREN'S HOSPITAL**                                          **DEFENDANT**

## ORDER

Plaintiff Valary Ward[1] filed a *pro se* lawsuit against her former employer, Arkansas Children's Hospital. Ms. Ward makes several racial discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, including failure to promote,[2] wrongful termination, hostile work environment, and retaliation.[3] Ms. Ward also alleges that the Hospital discriminated against her in violation of the Americans with Disability Act (ADA), 42 U.S.C. § 12101 *et seq.*, and that the Hospital retaliated against her in violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*[4] Pending before the Court is the Defendant's Motion for Summary Judgment.[5] For the reasons discussed below, the Court GRANTS the Motion in its entirety.

---

[1] At the summary judgment hearing in this case, Plaintiff indicated to the Court that she would like to be called Ms. Ward rather than Ms. Nellum. Accordingly, the Court directs the Clerk's office to change the case caption to reflect Plaintiff's name as "Valary Ward." In this Order, the Court will refer to Plaintiff as Ms. Ward.

[2] Pursuant to this Court's Order granting the Hospital's Partial Motion to Dismiss, the Court will not consider Ms. Ward's failure-to-promote claims based on failures to promote occurring before October 6, 2018. Order (Doc. 31).

[3] Compl. (Doc. 1); *Nellum v. Ark. Child.'s Hosp.*, No. 4:20-cv-01436-LPR, Compl. (Doc. 1).

[4] Compl. (Doc. 1); *Nellum v. Ark. Child.'s Hosp.*, No. 4:20-cv-01436-LPR, Compl. (Doc. 1).

[5] Def.'s Mot. for Summ. J. (Doc. 38).

# BACKGROUND[6]

Ms. Ward is a black woman.[7]  She worked for the Hospital as an Account Analyst I in the Patient Accounts department from October of 2012 until her termination on June 26, 2020.[8]  Three types of Account Analysts positions exist in the Patients Accounts department: Account Analyst I, Account Analyst II, and Account Analyst III.[9]  As an Account Analyst I, Ms. Ward's responsibilities related to billing, payments, and collections.[10]  Promotions from Account Analyst I to Account Analyst II or III occur when there's a business need.[11]

---

[6] On summary judgment, the Court recites the genuinely disputed facts in a light most favorable to the plaintiff, including giving the plaintiff all reasonable inferences from the facts.  *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016).  Of course, the Court also relies on any undisputed facts.  Essentially, the Court considers the most pro-plaintiff version of the record that a rational juror could conclude occurred.  There is, however, a quirk in this case that requires additional discussion.  Ms. Ward did not respond to the Hospital's Motion for Summary Judgment or its associated Statement of Undisputed Material Facts.  Her lack of response violates both the Local Rules and the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . ."); Local Rule 56.1(b) (stating that a non-moving party who opposes a motion for summary judgment "shall file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried");  Local Rule 56.1(c) ("All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."); *see also* Local Rule 7.2(b) ("[A]ny party opposing a motion shall serve and file with the Clerk a concise statement in opposition to the motion with supporting authorities.").  Because Ms. Ward did not respond to the Hospital's Motion, the Court accepts the Hospital's Statement of Undisputed Material Facts (Doc. 39) as admitted.

It is true that Ms. Ward filed her own Motion for Summary Judgment and included in it what she called an "Action of Facts."  However, as the Court made clear in its Order denying Ms. Ward's Motion for Summary Judgment on procedural grounds, her papers and "Action of Facts" utterly failed to comply with the applicable Local Rules and Federal Rules of Civil Procedure.  (Doc. 59).  Specifically, she never cited to the record to support any asserted facts.  The Court need not "mine [the] summary judgment record searching for nuggets of factual disputes to gild [her] arguments." *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006); *see also Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020) (explaining that it is not a "District Court's responsibility to sift through the record to see if, perhaps, there [is] an issue of fact") (quoting *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009)).  This insufficient "Action of Facts" thus cannot substitute for the necessary response to the Hospital's Statement of Undisputed Material Facts.

[7] Compl. (Doc. 1) at 6; Pl.'s Mot. for Summ. J. (Doc. 37) at 139.

[8] Def.'s Statement of Facts (Doc. 39) ¶ 1; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 3.

[9] Def.'s Statement of Facts (Doc. 39) ¶ 3; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 2.

[10] Def.'s Statement of Facts (Doc. 39) ¶ 2; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 4.

[11] Def.'s Statement of Facts (Doc. 39) ¶ 4; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 5.

In August of 2018, an Account Analyst II position became available.[12]  Ms. Ward's direct supervisor, Wanda Bilello,[13] informed Ms. Ward and two other Account Analyst I employees (T.M., a black woman, and B.M., a white woman) about the Account Analyst II opening.[14]  Ms. Ward had previously told Ms. Bilello that she wanted to be promoted to an Account Analyst II position.[15]

Ms. Bilello informed Ms. Ward about the application process for the Account II Analyst position.[16]  Ms. Bilello explained that Ms. Ward needed (1) to submit an Evaluation Documentation form (self-evaluation) and (2) to ask one of her colleagues to submit a Reference Evaluation on her behalf. [17]  Separately, because Ms. Ward indicated that she planned to submit

---

[12] Def.'s Statement of Facts (Doc. 39) ¶ 5; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 6.

[13] Nothing in the record indicates Ms. Bilello's race.

[14] Def.'s Statement of Facts (Doc. 39) ¶ 6; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 6.  Recall Ms. Ward began working at the Hospital in 2012.  T.M. had worked as an Account Analyst I since 2002 and B.M. since 2006.  Def.'s Statement of Facts (Doc. 39) ¶ 8; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 5.  At the time of Ms. Brown's declaration, there were seven Account Analyst Is working in the Patient Accounts department.  Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 4.  From May of 2018 to May of 2021, there were ten promotions in the department.  *Id.*  Of those ten, four promoted employees were black, one promoted employee was Hispanic, and five promoted employees were white.  *Id.*

[15] Def.'s Statement of Facts (Doc. 39) ¶ 7; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 6.

[16] From October of 2018 to June of 2019, Ms. Ward applied for several other positions at the Hospital, including: (1) Insurance Specialist II, Managed Care; (2) Accountant I – Specialized, Cost Report, Financial Decision Support; (3) Accountant I, Cost Accounting; (4) Legal Contracts Manager; and (5) Corporate Compliance Auditor, Corporate Compliance. Ex. 4 to Def.'s Mot. for Summ. J. (Doc. 38-4) ¶ 2.  The Hospital says Ms. Ward's application for the Insurance Specialist II position was denied because she submitted no work history to demonstrate that she had the required experience for the position.  *Id.* ¶ 3.  The Hospital says that her applications for the Accountant I positions were denied because she did not have the required Bachelor's accounting degree from a four-year college. *Id.* ¶¶ 4–5. The Hospital says that her application for the Legal Contracts Manager position was denied because she did not have the required seven years of total experience, including at least four years of managing contracts for a healthcare-related or other complex organization or legal office, maintaining databases, managing subpoenas, and working with notaries public. *Id.* ¶ 6. The Hospital says her application for the Corporate Compliance Auditor position was denied because she did not have the required Bachelor's degree in Business or in Healthcare Industry from a four-year college, or four years of related work experience and/or training.  *Id.* ¶ 7.  With respect to education, the record shows only that Ms. Ward earned an associate's degree in Business and a technical certificate in Accounting from the University of Arkansas Pulaski Technical College.  Ex. 3 to Def.'s Mot. for Summ. J. (Doc. 38-3) at 5.

[17] Def.'s Statement of Facts (Doc. 39) ¶¶ 9–12; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶¶ 6–8; Ex. A to Ex. 1 to Def.'s Mot. for Summ. J. (38-1) at 5.

3

an application for the promotion, Ms. Bilello wrote an evaluation for Ms. Ward, and also asked two of Ms. Ward's colleagues to submit evaluations on Ms. Ward's behalf.[18]

On August 31, 2018, Ms. Bilello emailed Ms. Ward that her Evaluation Documentation form must be returned within one week for Ms. Ward to be considered for the open Analyst II position.[19]  One week from August 31, 2018, was September 7, 2018.[20]  Ms. Ward did not return the form to Ms. Bilello, nor did Ms. Ward submit a Reference Evaluation by the September 7 deadline.[21]  The other two Analyst I employees, T.M. and B.M., timely submitted their applications.[22]

It was not until sometime in October that Ms. Ward finally submitted an application for the promotion.[23]  (The submission was incomplete.[24])  In response to Ms. Ward's submission, Ms. Bilello explained that the deadline for applying for the Account Analyst II promotion had passed and that the review board had already met and evaluated the applications that were submitted on time.[25]  The other two Account Analyst I employees, T.M. and B.M., were promoted to Account Analyst II positions.[26]

---

[18] Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 8.

[19] Def.'s Statement of Facts (Doc. 39) ¶¶ 10-11; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 7; Ex. B to Ex. 1 to Def.'s Mot. for Summ. J. (38-1) at 6.

[20] Def.'s Statement of Facts (Doc. 39) ¶ 11; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 7.

[21] Def.'s Statement of Facts (Doc. 39) ¶ 12; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 8; Ex. 3 to Def.'s Mot. for Summ. J. (Doc. 38-3) at 8.

[22] Def.'s Statement of Facts (Doc. 39) ¶ 16; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 9.

[23] Def.'s Statement of Facts (Doc. 39) ¶ 15; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 10.  Ms. Ward submitted her application after her annual performance evaluation.  Def.'s Statement of Facts (Doc. 39) ¶ 15; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 10.  Ms. Ward alleges that she received lower ratings than she had received at her previous evaluations.  Compl. (Doc. 1) at 9.  And she alleges that because of these lower ratings, she received a smaller raise than what she received in prior years.  *Id.*  The Court has not been directed to any record evidence to support these allegations, nor has the Court found any such evidence in its own review of the record.

[24] Def.'s Statement of Facts (Doc. 39) ¶ 15; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 10.

[25] Def.'s Statement of Facts (Doc. 39) ¶ 15; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 10.

[26] Def.'s Statement of Facts (Doc. 39) ¶ 16; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 9.

Sometime later in October of 2018, Ms. Ward contacted Le'Kita Brown, the Vice President of the Hospital's Revenue Cycle department, about not being promoted.[27]   Ms. Brown, a black woman, oversees the Patient Accounts department where Ms. Ward works.[28]   Ms. Ward told Ms. Brown that Ms. Ward believed she was denied the promotion because of her race.[29]   After investigating Ms. Ward's complaint, Ms. Brown concluded that race was not the reason that Ms. Ward did not get the promotion.[30]   Instead, Ms. Brown concluded that the reason was because Ms. Ward did not submit a timely application.[31]   Ms. Brown discussed the results of her investigation with Ms. Ward.[32]   In that meeting, and in subsequent meetings with Ms. Brown, Ms. Ward continued to express both dissatisfaction with her job and anger towards her supervisors because she was not promoted.[33]   Despite her unhappiness, Ms. Ward continued to work as an Account Analyst I.[34]

At the end of February of 2019,[35] Ms. Ward requested a meeting with the Hospital's HR department to discuss her concerns about not being promoted.[36]   That meeting took place on or around March 14, 2019.[37]   Also, on March 14, 2019, Ms. Ward received an oral Level 1 warning

---

[27] Def.'s Statement of Facts (Doc. 39) ¶ 17; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶¶ 1–3.

[28] Def.'s Statement of Facts (Doc. 39) ¶ 18; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶¶ 2–3; Hr'g Tr. at 24.

[29] Def.'s Statement of Facts (Doc. 39) ¶ 19; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 3.

[30] Def.'s Statement of Facts (Doc. 39) ¶ 20; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 3.

[31] Def.'s Statement of Facts (Doc. 39) ¶ 20; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 3.

[32] Def.'s Statement of Facts (Doc. 39) ¶ 21; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 6.

[33] Def.'s Statement of Facts (Doc. 39) ¶ 21; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 6.

[34] Def.'s Statement of Facts (Doc. 39) ¶ 22; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 11.

[35] In her Complaint and one of her EEOC charges, Ms. Ward alleges that she took FMLA leave in January of 2019 to care for her mother who was terminally ill.  Compl. (Doc. 1) at 10.  Ms. Ward's mother passed away in February of 2019.  Def.'s Resp. to Pl.'s Statement of Facts (Doc. 41) ¶ 31.  Sometime shortly after this, Ms. Ward was diagnosed with depression and anxiety.  *Id.* ¶ 32.

[36] Def.'s Resp. to Pl.'s Statement of Facts (Doc. 41) ¶ 34.

[37] Def.'s Resp. to Pl.'s Statement of Facts (Doc. 41) ¶ 34.

for violating the Hospital's Code of Conduct.[38]  Ms. Bilello documented the following problems with Ms. Ward's conduct:

> Communication. Not maintaining Code of Conduct.  Not maintaining a professional demeanor with interactions.  Unwillingness to [a]ccept feedback in a positive manner and applying it for growth.[39]

Ms. Ward believes that she received this warning in retaliation for scheduling the mid-March meeting with HR to air her concerns.[40]

In late March or early April of 2019, Ms. Ward received a written Level 2 warning for failing to follow departmental policies and for insubordination.[41]  Ms. Bilello documented the following problems with Ms. Ward's conduct:

> Valary contacted the Cost Account Director, Joy Abell on 3/19/19 regarding missing procedures.  Joy responded that Radiology staff were looking into these accounts for missing procedure room charges.
>
> On 3/20/19, Valary reported the issue to [Ms.] Bilello, her manager.  She did not make me aware that she had emailed or of the response she obtained from Joy Abell.  I asked for the examples so I could research and instructed her to defer the accounts while the issue was being researched.
>
> Valary followed up with her manager, on 3/21/19 and was instructed again to defer the accounts while pending an update from my research.
>
> Valary then began her own follow-up to the issue on 3/21/19 (see Procedure Not Populated on Account email) excluding her manager and Joy Abell, leading to multiple emails among several departments and mislead requests.
>
> This issue was addressed with Valary on 3/29 (verbally, followed by specific written instructions – see email 'Concerns and Clarifying'); however, she continued to email departments regarding the situation on 4/1/19 without manager involvement and against direction to defer accounts.  After being added back to the

---

[38] Def.'s Resp. to Pl.'s Statement of Facts (Doc. 41) ¶ 35; Def.'s Statement of Facts (Doc. 39) ¶ 23; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 11.

[39] Ex. C to Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) at 8.

[40] Compl. (Doc. 1) at 10.  Ms. Ward also says that she believes she received this warning in retaliation for filing an EEOC charge about the Hospital's discriminatory practices.  *Id.*  But that's impossible as Ms. Ward did not file her EEOC charge until late April of 2019.  *Id.*

[41] Def.'s Statement of Facts (Doc. 39) ¶ 24; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 12.

issue by HIM, the Cost Account Director against attempted to stop the email confusion with Valary . . . .[42]

Ms. Ward believes she received this warning in retaliation for complaining about Ms. Brown at her March meeting with HR.[43]

In May of 2019, Ms. Brown worried that Ms. Ward's displeasure with not being promoted was disrupting her work.[44]  Ms. Brown decided to offer Ms. Ward an Insurance Analyst position in a different department.[45]  When Ms. Ward questioned whether the Insurance Analyst position was a demotion, Ms. Brown assured Ms. Ward that this was a lateral move that presented an avenue to be promoted to a management position.[46]  Ms. Brown offered the position to Ms. Ward on

---

[42] Ex. D to Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) at 11.  In the same write-up, Ms. Bilello also provided the following summary of Ms. Ward's prior incidents of insubordination or problematic conduct:

> 3/29/19 Not following manager instruction leading to confusion among multiple departments.
> 3/18/19 Instructing team member to add modifiers without proper protocol. Caused confusion to team. Manager was not included in the email.
> 9/12/18 Not following instruction to report issues
> 9/6/18 Not following instruction on workqueue communications between departments
> 7/10/18 Not following instruction – Skipping Lunch
> 6/4/18 Not following instruction on HMS Audit Review
> 4/25/18 Not following instruction – Skipping Lunch
> 4/18/18 Instructing team member to add modifiers without proper protocol
> 4/11/17 Not following instruction of Legacy and Epic duties
> 3/22/18 Project for research-not following instructions
> 1/8/18 Not following instruction – Skipping Lunch
> 9/20/17 Changing PCP referral processes with team without proper protocol
> 4/15/16 Not following instruction regarding overtime goals
> 10/22/15 Not following instruction regarding overtime goals
> 8/14/15 Skipping Lunches – multiple requests to cease
> 5/11/15 Skipping Lunches Ex 38-1 at 10.

[43] Compl. (Doc. 1) at 10. Ms. Ward also says in her Complaint that she believes she received this warning in retaliation for filing an EEOC charge about the Hospital's discriminatory practices.  *Id.*  But that's impossible as Ms. Ward did not file her EEOC charge until late April 2019.  *Id.*

[44] Def.'s Statement of Facts (Doc. 39) ¶ 26; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 7.

[45] Def.'s Statement of Facts (Doc. 39) ¶ 26; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 7.  The Hospital contends that Ms. Ward would have been paid the same salary she was paid as an Account Analyst I.  Def.'s Statement of Facts (Doc. 39) ¶¶ 26–27; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 7.  Ms. Ward contends that she would have to take a pay cut if she accepted this position.  Pl.'s Mot. for Summ. J. (Doc. 37) at 139.  This dispute of fact is not material.

[46] Def.'s Statement of Facts (Doc. 39) ¶ 27; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 7.

several occasions, but Ms. Ward repeatedly rejected the offer.[47]  The position was filled by another Account Analyst I, who eventually was promoted to a management position.[48]  Ms. Ward continued to complain about not being promoted.[49]

In January of 2020, Ms. Ward received "another [m]edical certification from [her] doctor" for an unidentified disability.[50]  It appears, though it is not clear, that Ms. Ward believed and believes that this certification qualified her for FMLA leave and potentially other unidentified short-term disability benefits.[51]  Ms. Ward was out on medical leave from January of 2020 to March of 2020.[52]  Ms. Ward was not paid during this period.[53]

Upon her return, Ms. Ward alleges that she was required to complete remedial training.[54]  Ms. Ward claims that having to complete the remedial training humiliated her.[55]  The Hospital disputes that this training was "remedial."[56]  At the summary judgment hearing, the Hospital's counsel explained that this training "was more just a training on the processes while [Ms. Ward] was out to get her up to speed on the processes that had changed . . . ."[57]  There is no record evidence as to what the training entailed.

---

[47] Def.'s Statement of Facts (Doc. 39) ¶ 27; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 7.

[48] Def.'s Statement of Facts (Doc. 39) ¶ 27; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 7.

[49] Def.'s Statement of Facts (Doc. 39) ¶ 27; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 7.

[50] Def.'s Resp. to Pl.'s Statement of Facts (Doc. 41) ¶¶ 41, 43.

[51] *Id.* ¶¶ 41, 43–44.

[52] *Id.* ¶ 44.

[53] *Id.*

[54] *Id*.

[55] *Id.*

[56] *Id.*

[57] Hr'g Tr. at 61.

On April 7, 2020, Ms. Ward filed this lawsuit.[58]  On May 20, 2020, Ms. Ward had a video conference with Ms. Brown, Ms. Bilello, and Ms. Ward's other manager, Samantha Suggs.[59]  After Ms. Bilello and Ms. Suggs left the video conference, Ms. Brown overheard Ms. Ward make unprofessional statements about how she never wanted to see her supervisors' faces again.[60]  After hearing these remarks, Ms. Brown emailed Ms. Ward asking if they could have a conversation about Ms. Ward's comments.[61]  Ms. Brown explained that her intent was to help Ms. Ward move forward.[62]

On June 10, 2020, Ms. Ward received another written Level 2 warning for insubordination.[63]  Ms. Bilello documented the following problems with Ms. Ward's conduct: "Valary . . . continues the pattern of not following the directive given.  Conversations and emails have been attempted to ensure the employee understands the importance of following directives provided by [her] manager."[64]

Ms. Ward subsequently accused Ms. Bilello and Ms. Suggs of engaging in fraudulent billing.[65]  On June 19, 2020, Ms. Brown emailed Ms. Ward asking if these allegations were made in good faith or if they were made in retaliation for her supervisors' disciplinary action against Ms. Ward.[66]  And Ms. Brown also asked Ms. Ward to provide any evidence she had to support her

---

[58] Compl. (Doc. 1).  Ms. Ward filed three EEOC charges in 2019 on April 24, April 26, and May 9 in which she complained about her lack of promotion, a hostile work environment, and retaliation.  *Id.* at 6–10.  She received her right-to-sue letter on January 8, 2020.  *Id.* at 11.

[59] Def.'s Statement of Facts (Doc. 39) ¶ 28; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 8.

[60] Def.'s Statement of Facts (Doc. 39) ¶ 28; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 8.

[61] Def.'s Statement of Facts (Doc. 39) ¶ 29; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 8.

[62] Def.'s Statement of Facts (Doc. 39) ¶ 29; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 8.

[63] Def.'s Statement of Facts (Doc. 39) ¶ 25; Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) ¶ 13.

[64] Ex. E to Ex. 1 to Def.'s Mot. for Summ. J. (Doc. 38-1) at 13.

[65] Def.'s Statement of Facts (Doc. 39) ¶ 30; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 9.

[66] Def.'s Statement of Facts (Doc. 39) ¶ 31; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 10.

allegations.[67]  Ms. Ward responded that she had an email from September of 2019 that supported her allegations.[68]  On June 22, 2020, Ms. Brown emailed Ms. Ward asking her to forward Ms. Brown the September 2019 email by close of business the next day.[69]  Ms. Ward never forwarded that email to Ms. Brown.[70]

On June 23, 2020, Ms. Brown placed Ms. Ward on administrative leave pending an investigation into whether her allegations against Ms. Bilello and Ms. Suggs were malicious and not made in good faith.[71]  Ms. Brown found no evidence that Ms. Bilello or Ms. Suggs had engaged in any fraudulent or otherwise improper billing practices.[72]  On June 26, 2020, Ms. Ward was terminated for violating the Hospital's Code of Conduct and Harassment/Horizontal Violence policies.[73]  According to the Hospital, Ms. Ward violated the Hospital's policies "by repeatedly not following her supervisors' directives and instructions, by undermining her supervisors' leadership, by not creating a positive work environment, and by making groundless complaints in bad faith that caused unnecessary investigations and use of Hospital resources at the expense of department productivity."[74]  Ms. Ward contends that her termination was in retaliation for filing this lawsuit and for complaining about the unprofessional conduct of her supervisors.[75]

---

[67] Def.'s Statement of Facts (Doc. 39) ¶ 32; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 10.

[68] Def.'s Statement of Facts (Doc. 39) ¶ 32; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 10.

[69] Def.'s Statement of Facts (Doc. 39) ¶ 33; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 11.

[70] Def.'s Statement of Facts (Doc. 39) ¶ 34; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 10; Ex. 3 to Def.'s Mot. for Summ. J. (Doc. 38-3) at 11.

[71] Def.'s Statement of Facts (Doc. 39) ¶ 35; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 12.

[72] Def.'s Statement of Facts (Doc. 39) ¶ 36; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 12.

[73] Def.'s Statement of Facts (Doc. 39) ¶ 37; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 13.

[74] Def.'s Statement of Facts (Doc. 39) ¶ 37; Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 38-2) ¶ 13.

[75] Ex. 3 to Def.'s Mot. for Summ. J. (Doc. 38-3) at 13.

On December 10, 2020, Ms. Ward filed another lawsuit claiming wrongful termination based on race and retaliation in violation of Title VII, and also for alleged ADA discrimination.[76] The Court granted an unopposed motion to consolidate the December lawsuit with the April one.[77]

## LEGAL STANDARD

Summary judgment is proper if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[78]  If the moving party makes such a showing, the non-moving party must then present "specific facts, by affidavit, deposition, or otherwise, showing the existence of a genuine issue for trial" to avoid summary judgment.[79]

Importantly, "[t]he mere existence of a factual dispute is insufficient alone to bar summary judgment."[80]  The dispute of fact must instead be both genuine and material to prevent summary judgment.[81]  Whether there is a material dispute of fact "rests on the substantive law," because "it is the substantive law's identification of which facts are critical and which facts are irrelevant that

[76] *Nellum v. Ark. Child.'s Hosp.*, No. 4:20-cv-01436-LPR, Compl. (Doc. 1).  Ms. Ward filed an EEOC charge on September 15, 2020, in which she complained about retaliation and discrimination based on disability.  *Id.* at 4–9.  Ms. Ward did not allege wrongful termination based on race in her charge.  Thus, Ms. Ward did not exhaust her administrative remedies as to her wrongful termination claim.  Had the Hospital raised this issue in its argument, the Court would have limited the scope of this case to the claims properly brought before the EEOC.  *Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 539 (8th Cir. 2020) (citations and quotations marks omitted) ("In the context of employment discrimination, the [a]dministrative remedies are exhausted by the timely filing of a charge and the receipt of a right-to-sue letter.  Regarding a particular claim, the Eighth Circuit deem[s] administrative remedies exhausted as to all incidents of discrimination that are like or reasonably related to the allegations of the administrative charge.").  The issue is therefore waived, and the Court will consider Ms. Ward's wrongful termination claim based on race.  *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1850 (2019) (quotation marks and citations omitted) (holding Title VII's charge-filing requirement does "not speak to a court's authority, or refer in any way to the jurisdiction of the district courts").

[77] *Nellum v. Ark. Child.'s Hosp.*, No. 4:20-cv-01436-LPR, Order (Doc. 13).

[78] *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citing Fed. R. Civ. P. 56(c)(2)).

[79] *Grey v. City of Oak Grove*, 396 F.3d 1031, 1034 (8th Cir. 2005).

[80] *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

[81] *Torgerson*, 643 F.3d at 1042.

governs."[82]  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[83]

## DISCUSSION

Ms. Ward brings several claims under Title VII, the ADA, and the FMLA.  The Court will discuss each in turn.  None of them survives summary judgment.

## I. Title VII

Ms. Ward claims that the Hospital committed the following Title VII violations: failure to promote based on race, wrongful termination based on race, hostile work environment based on race, and retaliation.  Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."[84]  Title VII also "prohibits employer retaliation against employees who engage in protected activity . . . ."[85]

To survive a motion for summary judgment on a Title VII claim, a plaintiff must either (1) present admissible evidence directly indicating unlawful discrimination or retaliation, or (2) present admissible evidence that would allow a rational juror to make a reasonable inference of unlawful discrimination or retaliation under the burden-shifting framework in *McDonnell Douglas Corporation v. Green* and its progeny.[86]  Ms. Ward has provided no direct evidence of

---

[82] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[83] *Id.*

[84] 42 U.S.C. § 2000e-2(a)(1).

[85] *Id.* § 2000e-3(a).

[86] 411 U.S. 792 (1973); *see also Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1058 (8th Cir. 2020).

discrimination or retaliation, so the *McDonnell Douglas* framework applies to all of her Title VII claims.[87]

The *McDonnell Douglas* framework is as follows:

> [A] plaintiff must first establish a prima facie case of discrimination [or retaliation]. Then, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action.  If the defendant meets this burden, then the burden shifts back to the plaintiff to produce sufficient admissible evidence that creates a genuine issue of material fact regarding whether defendant's proffered nondiscriminatory justification is merely pretextual for intentional discrimination [or retaliation].[88]

**A. Failure to Promote Based on Race**

To establish a prima facie case for failure to promote based on race, a plaintiff must show that "(1) [she] is a member of a protected group; (2) [she] applied for a promotion to a position for which the employer was seeking applicants and for which [she] was qualified; (3) [she] was not promoted; and (4) similarly situated employees who did not belong to the protected group were promoted instead."[89]

Ms. Ward believes that the Hospital passed over her for an Account Analyst II promotion because of her race.  However, Ms. Ward provides no evidence to support this allegation. Based on undisputed facts in the record, the Account Analyst II position became open in August 2018. At that time, Ms. Ward's supervisor informed Ms. Ward about the opportunity, the application process, and the application deadline.  In an August 31, 2018 email, Ms. Bilello told Ms. Ward the deadline to apply for the position was September 7, 2018.  Ms. Ward did not submit her application until October of 2018.  Not only did Ms. Ward submit her application late, but the late application

---

[87] Evidence is direct when it shows "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action.  *Torgerson*, 643 F.3d at 1043–44.

[88] *Pribyl v. Cnty. of Wright*, 964 F.3d 793, 796 (8th Cir. 2020) (citations omitted).

[89] *Bennett v. Nucor Corp.*, 656 F.3d 802, 819–20 (8th Cir. 2011).

was incomplete.  By the time Ms. Ward applied, the promotion decisions had already been made. Two of Ms. Ward's colleagues, T.M. and B.M., who submitted timely applications were selected for the promotion.

Ms. Ward cannot establish (even for purposes of summary judgment) a prima facie case for failure to promote based on race because she cannot show that she applied for an available position.  By the time Ms. Ward applied, the position was no longer available.  The review board had already met, evaluated the applications, and made promotion decisions.  Ms. Ward does not dispute that she submitted a late application.  By submitting her application after the deadline passed, Ms. Ward missed her opportunity to apply and be considered for the promotion.  As there was no position available, no rational juror could conclude that Ms. Ward successfully applied for the promotion.  Thus, Ms. Ward fails to satisfy the "applied-for" prong of the prima facie test.[90]

Ms. Ward's remaining failure-to-promote claims are based on the Hospital's denial of her applications for the following positions: Insurance Specialist II, Accountant I, Legal Contracts Manager, and Corporate Compliance Auditor.  As discussed in footnote 15 above, the Hospital contends that it denied Ms. Ward's application for these positions because she did not qualify for any of them.  The Hospital denied Ms. Ward's application for the Insurance Specialist II and Legal Contracts Manager positions because she lacked the required work experience.  Ms. Ward points to no evidence to show that she had such work experience.  The Hospital denied Ms. Ward's

---

[90] As to Ms. Ward's principal failure-to-promote claim—the Account Analyst II position—summary judgment would be appropriate even if the Court were wrong about the prima facie case. The Hospital has provided legitimate, nondiscriminatory reasons for not promoting Ms. Ward to the Account Analyst II position.  She submitted her application for the promotion after the promotion decisions had been made—meaning there was no longer a position available for the Hospital to fill.  And even if there were still a promotion position available when Ms. Ward applied, the fact that she submitted a late and incomplete application would alone be enough to justify the Hospital's decision to reject her application.  No rational juror could find that the Hospital's legitimate, nondiscriminatory reasons for denying Ms. Ward's application were pretextual.  Ms. Ward provides no evidence whatsoever to support such a conclusion.  There is no evidence that the Hospital's proffered reason for not promoting Ms. Ward is "unworthy of credence . . . . because it has no basis in fact." *Torgerson*, 643 F.3d at 1047.  Nor is there any evidence from which a rational juror could conclude "that a prohibited reason more likely motivated the employer." *Id.*

application for the Accountant I and Corporate Compliance Auditor positions because she lacked a four-year degree.  Ms. Ward points to no evidence to show that she had such a degree.  Because no rational juror could conclude that Ms. Ward was qualified for these positions, she fails to establish (even for summary judgment purposes) the "qualified-for" prong of the prima facie test.

### B. Hostile Work Environment Based on Race

To establish a prima facie case for a claim of hostile work environment based on race, a plaintiff must show that: "(1) he or she is a member of a protected group; (2) he or she is subjected to unwelcome race-based harassment; (3) the harassment was because of membership in the protected group; and (4) the harassment affected a term, condition, or privilege of his or her employment."[91]   The workplace environment must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[92]   It "must be both objectively hostile as perceived by a reasonable person and subjectively abusive as actually viewed by [the plaintiff]."[93]

When considering the objective component, courts must examine the totality of the circumstances, "including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance and whether the conduct unreasonably interfered with the employee's work performance."[94]   Courts must also consider the

---

[91] *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005).

[92] *Id.*

[93] *Anderson v. Durham D & M, LLC*, 606 F.3d 513, 518 (8th Cir. 2010).

[94] *Id.*

"physical proximity to the harasser, and the presence or absence of other people" in its totality-of-the-circumstances assessments.[95]

Claims of hostile work environment must meet a demanding standard and courts are tasked with "filtering out" complaints that only raise "ordinary tribulations of the workplace."[96] "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."[97]   And "when a plaintiff attempts to establish a hostile work environment based on the actions of co-workers, he or she must then present evidence that the employer knew or should have known about the harassment and failed to respond in a prompt and effective manner."[98]

That is all to say that plaintiffs must clear a high hurdle to prove (and, correspondingly, survive summary judgment on) a hostile work environment claim under Eighth Circuit precedent.[99] Here, Ms. Ward has not provided any evidence from which a rational juror could conclude that she has proved such a claim.   Ms. Ward complains about a "toxic work environment," but she provides little to no detail about how it was toxic.[100]   One of the only specific instances Ms. Ward points to is the Hospital requiring her to complete a remedial training.   She contends that the Hospital imposed the training requirement to create a record that would later be relied on to justify her termination.   Even assuming *arguendo* that this is true, nothing in Ms. Ward's argument suggests that her race motivated the Hospital to impose the training requirement on her.   No

---

[95] *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999).

[96] *Anderson*, 606 F.3d at 519 (internal quotation marks omitted).

[97] *Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 979 (8th Cir. 2006).

[98] *Anderson*, 606 F.3d at 519 (internal quotation marks omitted).

[99] *See Singletary*, 423 F.3d at 888–90; *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004); *Jackson v. Flint Ink*, 370 F.3d 791, 793 (8th Cir. 2004); *Abdel-Ghani v. Target Corp.*, 686 F. App'x 377, 378 (8th Cir. 2017) (unpublished case).

[100] Ex. 3 to Def.'s Mot. for Summ. J. (Doc. 38-3) at 39–40, 93–94.

rational juror could conclude that Ms. Ward was subject to race-based harassment, much less race-based harassment sufficiently severe or pervasive to materially affect the conditions of her employment.

### C. Wrongful Termination Based on Race

In the termination context, a prima facie case for racial discrimination is established if the plaintiff shows that: "(1) she is a member of a protected group; (2) she was qualified for her position; (3) she was discharged; and (4) the discharge occurred under circumstances giving rise to an inference of discrimination."[101]   On this record, no rational juror could conclude that Ms. Ward has established a prima facie case of wrongful termination based on race.   Nothing in the record suggests that race motivated Ms. Ward's termination.   The record conclusively shows that Ms. Ward engaged in repeated, seriously unprofessional conduct.   The last straw was when Ms. Ward falsely accused her supervisors of fraudulent billing.   Nothing about this suggests racial discrimination.   In short, Ms. Ward fails prong four of the prima facie test.[102]

Even if Ms. Ward established a prima facie case, the Hospital would still be entitled to summary judgment.   The Hospital articulated legitimate, nondiscriminatory reasons for

---

[101] *Elam v. Regions Fin. Corp.*, 601 F.3d 873, 879 (8th Cir. 2010) (quotation marks and citation omitted).   There appears to be some conflict in the Eighth Circuit with respect to the proper prima facie standard in Title VII cases. *Compare Elam*, 601 F.3d at 879, *with Carter*, 956 F.3d at 1058 (internal quotations marks and citations omitted) (stating a prima facie case is established if the plaintiff shows that "(1) she is a member of a protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)").   Both *Elam* and *Carter* involved discharge discrimination claims under Title VII, and the Eighth Circuit has not explained whether these differing standards apply in different contexts.   It may be worth resolving this tension or providing guidance as to what circumstances dictate using one standard instead of the other.   Because the *Elam* standard is more plaintiff-friendly, the Court will use it.   In any event, whether Ms. Ward established a prima facie case does not change the outcome of the Court's decision here because, on this record, a rational juror could not conclude that the Hospital's nondiscriminatory reasons for terminating Ms. Ward were pretext for racial discrimination.

[102] One way a plaintiff can satisfy the fourth element is by showing that, "after [her] discharge, [s]he was replaced by a person with similar qualifications."   *Putman v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003).   Ms. Ward has provided no evidence on this point.

terminating Ms. Ward.  The Hospital says it terminated Ms. Ward for violating the Hospital's Code of Conduct and Harassment/Horizontal Violence policies in the following ways: (1) she repeatedly failed to follow her supervisors' directives and instructions; (2) she undermined her supervisors' leadership; (3) she failed to create positive environment; and (4) she made groundless complaints in bad faith that led to unnecessary investigations at the expense of the Hospital's resources and productivity.  The burden thus shifts back to Ms. Ward.  She must produce evidence that would allow a rational juror to conclude that the Hospital's proffered nondiscriminatory justifications are merely pretext for intentional discrimination.  A plaintiff generally demonstrates pretext in two ways: She may show that the employer's justification is unworthy of credence because it has no basis in fact or she may show that it is more likely that discriminatory animus motivated the employer's decision.[103]

Ms. Ward provides no evidence that would allow a rational juror to conclude (1) that the Hospital's proffered justifications for terminating Ms. Ward have no basis in fact, or (2) that it is more likely that discriminatory animus motivated her firing.  Instead, it is undisputed that Ms. Ward made negative comments about her supervisors at the end of a meeting when she thought no one could hear.  It is undisputed that Ms. Ward falsely accused her colleagues of fraudulent billing. It is undisputed that Ms. Ward violated the Hospital's Code of Conduct and policies.  It is undisputed that Ms. Ward received several warnings for insubordination.  On this record, and given the abundance of record evidence showing Ms. Ward's lengthy disciplinary record, no rational juror could conclude that the Hospital's justifications for terminating Ms. Ward were pretext for intentional discrimination.

---

[103] *Rooney v. Rock-Tenn Coverting Co.*, 878 F.3d 1111, 1117 (8th Cir. 2018).  These are not the only ways a plaintiff can demonstrate pretext for discrimination.

### D. Retaliation

Ms. Ward claims that the Hospital retaliated against her for complaining about racial discrimination.  To establish a prima facie case for retaliation, a plaintiff must demonstrate that "(1) [s]he engaged in protected conduct, (2) [s]he suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct."[104]

Ms. Ward has satisfied the "protected-conduct" prong of the prima facie standard; she engaged in protected activity by filing an EEOC charge.[105]  As for prong two, "a materially adverse action is one that might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[106]  Ms. Ward points to the so-called "remedial" training as evidence of a materially adverse employment action.  No Eighth Circuit precedent supports the notion that a single training (even if "remedial) constitutes a materially adverse employment action.  And there is no evidence to suggest the training was out of the ordinary.  Indeed, there is no evidence describing the training at all.  On this record then, there is no evidence that would allow a rational juror to find that a remedial training constituted a materially adverse employment action. So, Ms. Ward cannot make out a prima facie case.

Ms. Ward also argues that the Hospital terminated her in retaliation for filing her EEOC charge and this lawsuit.  Ms. Ward has produced no evidence that would allow a rational juror to find a causal connection between (1) her termination and (2) the filing of any EEOC charge or this lawsuit.  As explained above in Section I.C, the record unambiguously shows that Ms. Ward was

---

[104] *Watson v. McDonough*, 996 F.3d 850, 856 (8th Cir. 2021).

[105] Protected activity under Title VII occurs when a plaintiff reports unlawful behavior or participates in an investigation under Title VII.  *See Green v. Franklin Nat. Bank of Minneaopolis*, 459 F.3d 903, 913–14 (8th Cir. 2006); *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002).  Such activity includes filing an EEOC charge.  *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006).

[106] *Jackman v. Fifth Jud. Dist. Dept. of Corr. Servs.*, 728 F.3d 800, 805 (8th Cir. 2013).

fired after she repeatedly violated her employer's code of conduct, defied her supervisors' directives, and falsely accused her supervisors of fraudulent billing.  There's no evidence to suggest that Ms. Ward's termination was retaliatory—i.e., causally related to protected activity.  Ms. Ward's position to the contrary is based solely on the timing of her protected activity and her termination.  The length of time between the EEOC filings and Ms. Ward's termination is too long to (on its own) support an inference of pretext.  And although the time between the filing of litigation and Ms. Ward's termination is shorter, it is not short enough to support (on its own) the assertion of pretext.

Even assuming she made out a prima facie case, her claim fails to survive summary judgment because no rational juror would find the legitimate, nondiscriminatory reasons proffered by the Hospital for her termination to be a pretext for retaliation.  Again, as discussed above in Section I.C, the record is absolutely clear that Ms. Ward's lengthy disciplinary record led to her termination.  No rational juror could conclude otherwise.

## II. ADA Discrimination

Ms. Ward also alleges that the Hospital sent her to remedial training and terminated her because of her disability.  The ADA prohibits covered employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, [or] the hiring, advancement, or discharge of employees . . . ."[107]  Like race discrimination and retaliation, disability discrimination may be shown by either direct or indirect evidence.[108]  In the absence of direct evidence, as here, the *McDonnell Douglas* burden-shifting framework applies.[109]  To establish a prima facie claim of discrimination under the ADA, a plaintiff must show (1) that she

---

[107] 42 U.S.C. § 12112(a).

[108] *Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 543 (8th Cir. 2018).

[109] *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016).

was disabled within the meaning the ADA, (2) that she was qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) that she suffered an adverse employment action because of her disability.[110]

Ms. Ward contends that she suffered two adverse employment actions because of her disability: (1) her being required to complete remedial training; and (2) her termination.  In Section I.D above, the Court already explained that, on this record, no rational juror could conclude that the so-called "remedial" training constituted an adverse employment action.  So, Ms. Ward cannot make out a prima facie case for the purposes of summary judgment.  With respect to termination, even assuming she made out a prima facie case, her claim fails to survive summary judgment because no rational juror would find the legitimate, nondiscriminatory reasons proffered by the Hospital for her termination to be a pretext for disability discrimination.  As discussed above in Section I.C, the record is absolutely clear that Ms. Ward's lengthy disciplinary record led to her termination.

## III. FMLA Retaliation

The Court next turns to Ms. Ward's retaliation claim under the FMLA.  The Court has struggled to discern whether Ms. Ward claims that she experienced retaliation in violation of the FMLA.  At the summary judgment hearing, the Hospital's counsel disputed that Ms. Ward had stated an FMLA retaliation claim.[111]  While the Hospital may be right, the Court believes the fairest way to proceed is as though Ms. Ward made an FMLA claim.

---

[110] *Id.*; *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013).

[111] Hr'g Tr. at 61.  The Hospital's counsel also argued that, even if Ms. Ward had stated an FMLA claim, that claim would be time-barred.  *Id.*  There's a two-year statute of limitations for claims brought under the FMLA.  *See Read v. Lear Corp.*, 556 F.3d 674, 681 (8th Cir. 2009) (citing 29 U.S.C. § 2617(c)(1)) ("[A]n action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought")).  Ms. Ward filed this lawsuit in January 2020, which is less than a year after the Hospital required Ms. Ward to attend the remedial training after she returned from FMLA leave in the spring of 2019.  As such, her claim is not time-barred.

Ms. Ward contends that the Hospital retaliated against her in violation of the FMLA.  Ms. Ward alleges that the Hospital retaliated against her by forcing her to do a remedial training because she took FMLA leave.  Ms. Ward's FMLA retaliation claim cannot survive summary judgment.  Like Title VII claims, Ms. Ward can rely on direct evidence or the *McDonnell Douglas* burden-shifting framework to establish retaliatory motive under the FMLA.[112]  Because there's no direct evidence here, the *McDonnell Douglas* framework applies.  To establish a prima facie case of FMLA retaliation, Ms. Ward "must show that: 1) she engaged in protected conduct; 2) she suffered a materially adverse employment action; and 3) the materially adverse action was causally linked to the protected conduct."[113]  In other words, to defeat summary judgment, Ms. Ward must provide evidence from which a rational juror could conclude that she exercised her FMLA rights, that she suffered a materially adverse employment action, and that a causal connection exists between her exercise of rights and the materially adverse employment action.  As explained above in Section I.D, no rational juror could that the so-called remedial training constitutes a materially adverse employment action.  This is fatal to her claim and justifies summary judgment.

## CONCLUSION

Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED this 18th day of August 2022.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[112] *Sisk v. Picture People, Inc.*, 669 F.3d 896, 899 (8th Cir. 2012).

[113] *Id.* at 900 (internal quotations and citation omitted).